UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DADE DIVISION

ARANTZA ESPINOZA,                                                  CASE NO.

      Plaintiff,

vs.

PANDORA JEWELRY LLC., a
Foreign for-profit limited liability company,

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, Arantza Espinoza, through undersigned counsel, sues Defendant Pandora Jewelry LLC,, foreign for-profit limited liability company (hereinafter referred to as "Pandora"), for declaratory and injunctive relief, and damages, and alleges as follows:

1. This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2. This action is also brought pursuant to 28 C.F.R. Part 36.

3. This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4. Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5. Plaintiff is *sui juris*, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6. Defendant, Pandora is a foreign for-profit limited liability company authorized to do business and doing business in the State of Florida.

7. Defendant, Pandora is a chain of retail stores that sells hand-finished and contemporary jewelry. There are eleven (11) Pandora retail stores in Miami-Dade County.

8. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase jewelry items.

10. Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11. The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12. The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13. Venue is proper in the Southern District of Florida, Miami Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Miami.

14. Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15. At all relevant times, Plaintiff is and was visually impaired and has suffered from Leber Congenital Amaurosis since birth, which is a condition that substantially impairs Plaintiff's vision.

16. Plaintiff's visual impairment interferes with her day-to-day activities, and causes her limitations in visualizing her environment. As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq.*, and in 42 U.S.C. 3602, §802(h).

17. Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons. The software that she uses is screen reader software that is readily available commercially.

18. Defendant is a private entity which owns and operates Pandora locations. The department stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19. Defendant controls, maintains, and/or operates a website called https://us.pandora.net. On its website, the Defendant provides the public information on the various locations of Defendant's retail stores and allows consumers to purchase jewelry items for home delivery.

20. Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to purchase jewelry through the website.

21. Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website is a sales establishment where the public can view and purchase merchandise, and it cannot discriminate against individuals with disabilities.

22. Plaintiff is a customer of Defendant who is and was interested in purchasing jewelry through Defendant's website.

23. Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her.

24. On or about March 23, 2018, Plaintiff attempted to purchase jewelry on Defendant's website and made several attempts to browse through the items available on Defendant's website.

25. Plaintiff utilized Chrome Vox ("Screen Reader Software") to purchase the merchandise on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains the following access barriers causing it to fail WCAG 2.0-AA Compliance and did not provide sufficient alternatives to serve the equivalent purpose:

**Errors that prevent user to complete desired action**
- Keyboard focus gets trapped due to improper coding of product carousels (unable to be moved to another component of the page using only the keyboard, without any other advised method).

**Errors that make it difficult to navigate through the website**
- Focus order of certain items does not preserve the meaning and operability.

- Functional Image(s) found that is a duplicate of another link, therefore should be combined with adjacent link text, with no alt text to prevent instruction duplication.

26. Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

27. Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

28. On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

29. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

30. Notice to Defendant is not required because of Defendant's failure to cure the violations.

31. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

32. Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

33. Plaintiff realleges paragraphs 1 through 32 as if set forth fully herein.

34. Defendant owns and operates the https://us.pandora.net website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

35. Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

36. Defendant's website is not in compliance with the ADA.

37. A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

**Errors that prevent user to complete desired action**
- Keyboard focus gets trapped due to improper coding of product carousels (unable to be moved to another component of the page using only the keyboard, without any other advised method); *Standard 2.1.2*

**Errors that make it difficult to navigate through the website**
- Focus order of certain items does not preserve the meaning and operability; *Standard 2.4.3*
- Functional Image(s) found that is a duplicate of another link, therefore should be combined with adjacent link text, with no alt text to prevent instruction duplication; *Standard 1.1.1*

38. Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

39. As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor against Defendant pursuant to the Court's authority per 42 U.S.C. §12188, for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant to update its https://us.pandora.net website to remove barriers to allow individuals with visual disabilities to access and communicate with the website as required by Title III of the ADA;

C. An Order requiring Defendant to clearly display the universal disabled logo within its website leading to page which would state Defendant's accessibility information, facts, policies, and accommodations;

D. An order requiring Defendant to implement a website accessibility coordinator;

E. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

F. Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

40. Plaintiff realleges paragraphs 1 through 32 as if set forth herein.

41. Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

42. Plaintiff never consent to and was unaware that Defendant's website was placing software on her computer.

43. Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

44. Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

45. On its website, Defendant has a section called "Privacy Policy", providing that they use cookies and similar technologies to collect a consumer's information as follows:

**We collect information from and about you.**
**We collect contact information.** For example, we might collect your name and email address if you register on our site or for the Club. We may also collect your phone number and mailing address if you make a purchase. We might also collect this information if you enter a contest or sweepstakes.

**We collect demographic information.** We may collect information like your gender and age. We may also collect your zip code. We might collect this when you engage with our websites, the Club, or contact us. If you are a Club member, we collect your birthdate and anniversary if you provide them to us.

**We collect payment information.** For example, we collect your credit card number if you make a purchase.

**We collect information you submit or post.** For example, we collect product reviews and questions that you post on our site. We also collect information when you contact us.

**We collect other information.** If you use our website, we may collect information about the browser you're using. We might look at what site you came from, or what site you visit when you leave us. We collect this information using the tracking tools described below. To control those tools, please read the "Your Choices" section.

**We collect information in different ways.**
**We collect information directly from you.** For example, if you register with us or the Club or sign up for our emails. We also collect information if you make a purchase or contact us.

**We collect information from you passively.** We use tracking tools like browser cookies and web beacons to collect information from you. We collect information about users over time when you use this website. We may have third parties collect personal information this way. Learn more about these tools and how you can control them, here.

**We get information about you from third parties.** For example, our business partners may give us information about you. Social media platforms may also give us information about you.

**We combine information.** For example, we may combine information that we have collected offline with information we collect online. Or we may combine information we get from a third party with information we already have.

**We use information as disclosed and described here.**
**We use information to respond to your requests or questions.** For example, we might contact you about your PANDORA Club account or feedback. We will use your information to fulfill your purchases.

**We use information to improve our products and services.** We may use your information to make our website and products better. We might use your information to customize your experience with us. We may combine information we get from you with information about you we get from third parties.

**We use information for security purposes.** We may use your information to protect our company, our customers, and our websites.

**We use information for marketing purposes.** For example, we might provide you with information about new products and special offers. We might also use your information to serve you and others ads about our products and offers. We might tell you about new features or updates. These might be third party offers or products we think you might find interesting. If you register with us, we'll enroll you in our email newsletter. To manage this, read the "Your Choices" section below.

**We use information to communicate with you about your account or our relationship.** We may contact you about your account or feedback. We might also contact you about this Policy or our website Terms.

**We use information as otherwise disclosed or permitted by law.**


**We may share information with third parties.**

**We will share information within the PANDORA family of companies.** This includes authorized PANDORA dealers.

**We will share information with third parties who perform services on our behalf.** For example, we share information with vendors who send emails for us. We also share information with companies that help us operate our sites or fulfill purchases. Some vendors may be located outside of the United States.

**We may share your information with our business and marketing partners.** For example, we might share information with third parties that co-sponsor a promotion. We may also share information with third parties that help us with marketing. This may include social media platforms.

**We will share information if we think we have to in order to comply with the law or to protect ourselves.** For example, we will share information to respond to a court order or subpoena. We may share information if a government agency or investigatory body requests it. We might share information if we are investigating potential fraud. This might include fraud we think has happened during a promotion. We may also share your information if you are the winner of a sweepstakes or other contest with anyone who requests a winner's list.

**We may share information with a successor to all or part of our business.** For example, if part of our business is sold we may include user information as part of that transaction.

**We may share information for other reasons we may describe to you from time to time.**

47.     Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

48.     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

**Request for Jury Trial**

49. Plaintiff requests a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By:            /s/
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  lr1208@live.com
By:            /s/
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647